## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

SEAN MURPHY,

              **Plaintiff,**

v.

EISAI, INC and EISAI, LTD,

            **Defendants.**

Civ. No. 19-17552 (KM) (SCM)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Sean Murphy claims that the company for which he worked failed to appropriately accommodate his disability by furnishing him with the electric sit-stand desk that he requested. Murphy was hired by Defendant Eisai, Ltd ("Eisai UK") to work at their offices in Hatfield, England, UK. He brings suit against Eisai UK as well as a separate entity in the United States, Eisai, Inc. ("Eisai US"). Now before the Court is the defendants' motion to dismiss the complaint for lack of personal jurisdiction over Eisai UK and for failure to state a claim, in that the Rehabilitation Act does not apply extraterritorially. For the reasons set forth below, the motion is granted.

### I.  Background[1]

Defendant Eisai UK is an entity headquartered in England. (Compl. ¶ 3). Defendant Eisai US is an entity headquartered in New Jersey. (*Id.* ¶ 2).

---

[1]    Citations to the record will be abbreviated as follows:

"DE __" refers to the docket entry numbers in this case.

"Compl." refers to the complaint (DE 1)

"Def. Br." refers to defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Complaint (DE 8)

"Pl. Opp." refers to the plaintiff's opposition (DE 9)

On June 25, 2018, Plaintiff Sean Murphy was hired as a subcontractor by Eisai UK through a third-party hiring agency, Allegis Group Limited, d/b/a Aerotek ("Aerotek"). (*Id.* ¶ 11). His duties involved working on statistical reports for a clinical trial sponsored by Eisai UK. (*Id.*). Eisai US was listed as the "responsible party" on that clinical trial. (*Id.*). Murphy's work was managed by Mr. Cixin He, an employee of Eisai US, operating out of an office in Woodcliff Lake, New Jersey. (*Id.* ¶ 13).

Mr. Murphy worked entirely in England, but participated in regular conference calls with Mr. He and others who were physically located in New Jersey. (*Id.* ¶ 14). Mr. He traveled to England to meet with his statistical team in July of 2018. Officials from Eisai UK and Eisai US would periodically hold meetings in New Jersey. (*Id.* ¶ 15).

On Murphy's first day at work, he received an email from the Health and Safety Department of Eisai UK requesting that he complete a desk ergonomics checklist. (*Id.* ¶ 20). He responded that he had certain medical conditions requiring a sit-stand desk. (*Id.* ¶ 21). Eisai UK sent one of its employees, Elaine Gillingham, to meet with him and conduct a work desk evaluation. (*Id.* ¶¶ 24, 25).

On July 15, 2018, Murphy received an email from Aerotek, requesting a photograph of a sit-stand desk "already located and available in his working space." (*Id.* ¶ 27). Mr. Murphy complied the next day, and met with Andrew Bolton, a human resources representative of Eisai UK, and Lawrence Marriage, a representative of Aerotek. (*Id.* ¶¶ 28–29). During this meeting, the three discussed various possibilities for accommodating Murphy's need for a sit-

---

"Def. Reply Br." refers to Defendants' Reply Memorandum in Further Support of Defendants' Motion to Dismiss Plaintiff's Complaint (DE 15)

"Alvarez Cert." refers to the Certification of Gregory T. Alvarez and the Exhibits attached to that Certification (DE 8-2)

"Mayer Cert." refers to the Certification of Susan Mayer (DE 15-2)

stand desk. (*Id.* ¶¶ 29–31). Another meeting was held on August 7, 2018, again with Mr. Marriage from Aerotek, but with a different representative of Eisai UK's human resources department, Nicola Coombe. (*Id.* ¶ 32). The next day, Ms. Coombe emailed Murphy denying his request for the sit-stand desk. (*Id.* ¶ 33).

Later, allegedly on August 28, 2018, Murphy emailed Christa Murphy,[2] the director of human resources at Eisai US. (*Id.* ¶ 35). She allegedly responded to this email "by ignoring Mr. Murphy's request for accommodation." (*Id.* ¶ 36). On August 29, 2018, Andrew Bolton, the Eisai UK human resources representative, terminated Mr. Murphy. (*Id.* ¶ 38).

Mr. Murphy filed a complaint in this Court on September 3, 2019, naming Esai UK and Esai US as defendants. (DE 1). He brings four counts pursuant to the Rehabilitation Act of 1973: one count of disability discrimination and one count of retaliation against each defendant. (*Id.*). Defendants have jointly filed a motion to dismiss for (1) lack of personal jurisdiction as to Eisai UK and (2) failure to state a claim as to both Defendants. (DE 8). Plaintiff filed a brief in opposition (DE 9), to which Defendants filed a reply (DE 15). The matter is therefore briefed and ripe for decision.

## II.     Legal Standards

### A.   Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are

---

[2]     Throughout, "Murphy" should be understood to refer to the plaintiff, Mr. Sean Murphy. References to Ms. Christa Murphy (no relation, Compl. ¶ 35 n.3) will be clearly identified as such.

drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Housing Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### B. Fed. R. Civ. P. 12(b)(2)

In advance or in lieu of an answer, a defendant may move to dismiss a complaint for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). The issue is ultimately a factual one, as to which the plaintiff has the burden:

> A Rule 12(b)(2) motion ... is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence.... [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations.

*Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101 (3d Cir. 2004) (citing *Patterson v. FBI*, 893 F.2d 595, 603–604 (3d Cir. 1990) (citing *Time Share*

*Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n. 9 (3d Cir.1984))
(internal citations omitted).)

Both sides offered evidence on the personal jurisdiction issue. But where, as here, there has not been discovery or an evidentiary hearing, the plaintiff receives the benefit of what amounts to a Rule 12(b)(6) standard:

> To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants. *Pinker,* 292 F.3d at 368. However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor.

*Miller Yacht Sales*, 384 F.3d at 97; *accord Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020) ("Because the District Court did not hold an evidentiary hearing on personal jurisdiction, we take [plaintiff]'s factual allegations as true.").

## III.   Discussion

A word about the order of discussion:

The extraterritorial effect of the Rehabilitation Act, which implicates the scope of the conduct reached by the statute, presents a Rule 12(b)(6) issue of failure to state a claim. *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 254, 130 S. Ct. 2869, 2877 (2010) (holding that extraterritorial application of statute is merits issue under Fed. R. Civ. P. 12(b)(6), not a jurisdictional issue under Fed. R. Civ. P. 12(b)(1)). Personal jurisdiction over Eisai UK, however, presents a jurisdictional issue under Rule 12(b)(2).

Classically, in a one-defendant case, the court must first decide the defendant's Rule 12(b)(2) motion to dismiss the complaint for lack of personal jurisdiction. If jurisdiction is present, the court will proceed to the merits of the defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim; if personal jurisdiction is absent, the court is powerless to address the merits of

the Rule 12(b)(6) motion.[3] Here, however, there are two defendants: Eisai US and Eisai UK. Only one, Eisai UK, asserts that the court lacks personal jurisdiction over it. So whether or not Eisai UK's jurisdictional motion is granted, the Court must address the merits of the Rule 12(b)(6) motion, at least as regards one defendant, if not both.

It is therefore merely as a matter of convenience that this Opinion addresses the Rule 12(b)(6) motion first. The personal jurisdiction issue is more easily grasped once the substantive factual allegations of the complaint, and their connection if any to the U.S., have been explored.

In Part A, I hold that that the complaint must be dismissed for failure to state a claim. In doing so, I accept the argument, common to both defendants, that the complaint impermissibly seeks to give extraterritorial effect to the Rehabilitation Act. That holding surely applies Eisai US; whether it also

---

[3]     In that connection, the Third Circuit has adopted what appears to be a bright-line rule, believing itself bound by the principles embodied in Supreme Court precedent. *See In re Lipitor Antitrust Litig.*, 855 F.3d 126, 151 (3d Cir. 2017) (remanding because the district court improperly dismissed defendants under Rule 12(b)(6) without first considering subject matter or personal jurisdiction); *Malay. Int'l Shipping Corp. v. Sinochem Int'l Co.*, 436 F.3d 349, 358 (3d Cir. 2006) ("An actual determination must be made whether subject matter jurisdiction exists before a court may turn to the merits of a case"; in addition, "[p]ersonal jurisdiction is also 'an essential element of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication.'").

Other courts of appeals, however, have permitted the district courts to avoid discovery and litigation over personal jurisdiction, where the result would be merely to poise a meritless case for its inevitable dismissal on the merits. *See O'Brien v. Town of Bellingham*, 943 F.3d 514, 527 (1st Cir. 2019) ("[W]here an appeal presents a difficult jurisdictional issue, yet the substantive merits underlying the issue are facilely resolved in favor of the party challenging jurisdiction, the jurisdictional issue may be avoided."); *SPV OSUS, Ltd. V. UBS AG*, 882 F.3d 333, 346-48 (2d Cir. 2018) (Calabresi, J., concurring) (arguing that courts are permitted to assume personal jurisdiction in order to reach a merits question); *Lee v. City of Beaumont*, 12 F.3d 933, 937 (9th Cir. 1993) ("A court may assume the existence of personal jurisdiction and adjudicate the merits in favor of the defendant without making a definitive ruling on jurisdiction.").

extends to Eisai UK, however, depends on the antecedent issue of whether the court has personal jurisdiction over Eisai UK.[4]

In Part B, therefore, I consider whether the Court possesses personal jurisdiction over Eisai UK. I hold that jurisdiction is lacking, and dismiss the complaint against Eisai UK on that basis. I will exercise my discretion to deny jurisdictional discovery.

Both dismissals, however, are without prejudice. An amended complaint, should one be filed, may present the issues differently.

### A. Failure to state a claim (Fed. R. Civ. P. 12(b)(6))

Defendants make a number of Rule 12(b)(6) arguments. The first is that the Rehabilitation Act, pursuant to which Murphy brings each cause of action, does not apply to this case, which is based on conduct that occurred outside of the United States. I agree that the Rehabilitation Act does not apply extraterritorially here, and that the complaint therefore fails to state a claim. I do not reach Defendants' other merits arguments.

It is a "longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Morrison*, 561 U.S. at 255, 130 S. Ct. at 2877. Accordingly, "[w]hen a statute gives no clear indication of an extraterritorial application, it has none." *Id.*

The court, in analyzing an extraterritoriality issue, must undertake a two-step analysis to determine (1) whether the statute has extraterritorial effect, and if not, (2) whether the focus of the plaintiff's claim consists in foreign conduct:

> At the first step, we ask whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially. We must ask this question regardless of whether the statute in question regulates conduct, affords relief, or merely confers

---

[4]   I set aside contingent issues such as the *res judicata* effect of a dismissal as to Eisai US alone.

> jurisdiction. If the statute is not extraterritorial, then at the second step we determine whether the case involves a domestic application of the statute, and we do this by looking to the statute's "focus." If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory.

*RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2101 (2016).

### 1. Step one: Extraterritorial scope of Rehabilitation Act

As for the first step, the Rehabilitation Act contains no clear indication of extraterritorial application. Indeed, it explicitly provides to the contrary:

> No otherwise qualified individual with a disability *in the United States*, as defined in section 7(20) [29 USCS § 705(20)] shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any   program   or   activity   receiving Federal financial assistance . . . .

29 U.S.C. § 794(a) (emphasis added). There is substantial case law, including a non-precedential Third Circuit case, citing that statutory wording and holding that the Rehabilitation Act does not have extraterritorial scope. *See, e.g., Archut v. Ross Univ. Sch. of Veterinary Med.*, 580 F. App'x 90 (3d. Cir. 2014), *aff'g with approval* No. CIV.A. 10-1681 MLC, 2013 WL 5913675 (D.N.J. Oct. 31, 2013); *Oluwamuyiwa Awodiya v. Ross Univ. Sch. of Med.*, 391 F. Supp. 1098, 1106-07 (S.D. Fla. 2019); *Galligan v. Adtalem Global Educ. Inc.*, 2019 U.S. Dist.  LEXIS 17218, at *6-7 (N.D. Ill. 2019) (holding the Rehabilitation Act "by its own terms limits relief to those 'in the United States,' language which supports rather than rebuts the presumption against extraterritoriality"); *Straw v. U.S. Dep't of State*, No. CV ELH-19-2294, 2020 WL 2490022, at *13 (D. Md. May 14, 2020) (holding that "the Rehabilitation Act does not protect individuals located abroad"), *aff'd o.b.*, 813 F. App'x 108 (4th Cir. 2020).

I agree. The Rehabilitation Act does not have extraterritorial application. It does not reach conduct in foreign countries, even if such conduct would violate the Act if performed in the United States.

### 2. Step 2: Whether the acts relevant to the "focus" of the Rehabilitation Act claims are domestic or foreign

I therefore move to step two: determining whether the plaintiff's claim does in fact exceed the territorial scope of the Rehabilitation Act. That step two analysis requires that the court consider (a) the "focus" of the statutory cause of action, and (b) whether the acts relevant to that focus occurred domestically or abroad:

> As indicated, the Rehabilitation Act does not apply abroad. Therefore, the Court must "determine whether this case involves a domestic application of the statute," which entails "looking to the statute's 'focus.'" *RJR Nabisco*, 136 S. Ct. at 2101. "If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad." *Id.* On the other hand, "if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." *Id.*

*Straw v. U.S. Dep't of State*, 2020 WL 2490022, at *13.

### a. The "focus" of a claim of discrimination or retaliation under the Rehabilitation Act

The first stage of the step two analysis is to identify the "focus" of the particular statutory claim at issue.

The elements of a claim of failure-to-accommodate disability discrimination, in violation of the Rehabilitation Act (Counts 1 and 3), are well established:

> In order for an employee to make out a prima facie case of discrimination under the Rehabilitation Act, the employee bears the burden of demonstrating (1) that he or she has a disability, (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job. The plaintiff must

> make a prima facie showing that reasonable accommodation is possible. If the plaintiff is able to meet these burdens, the defendant then bears the burden of proving, as an affirmative defense, that the accommodations requested by the plaintiff are unreasonable, or would cause an undue hardship on the employer.

*Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996). The "focus" of that cause of action, then, is the employer's wrongful refusal to provide a reasonable accommodation of the employee's disability in the workplace.[5]

The elements of a claim of retaliation under the Rehabilitation Act (Counts 2, 4) are as follows:

> [P]laintiffs must show (1) that they engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action.

*Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Here, too, the "focus" of this statutory cause of action is a wrongful act of retaliation by the employer, up to and including firing the employee.

### b. Whether the conduct relevant to that "focus" is domestic or foreign

The next stage of the step two analysis is to determine whether the "conduct relevant to that focus" occurred in the United States or abroad. If the conduct relevant to the focus occurred outside of the US, "then the case involves an impermissible extraterritorial application"; and that conclusion holds true "regardless of any other conduct that occurred in U.S. territory." *RJR Nabisco,* 136 S. Ct. at 2101.

The conduct relevant to the Rehabilitation Act claims is set forth in the complaint, as supplemented by certain documents cited and relied upon therein.

---

[5] I use the terms employer and employee as a shorthand. The Complaint alleges that Mr. Murphy was hired as a subcontractor, through a third-party agency, Aerotek (Compl. ¶ 11), although his precise status and the mechanics are unclear.

When working at the offices of Eisai UK in England, Mr. Murphy requested an accommodation of his disability, in the form of an electric sit-stand desk. His workplace was located in the United Kingdom, his work was performed there, and the locus of his suffering from his un-accommodated disability would have been his regular desk or work station at the offices of Eisai UK in Hatfield, England. The communications, negotiations, and meetings concerning the sit-stand desk were between Mr. Murphy and Eisai UK employees, and they all occurred in the United Kingdom. It was Eisai UK which allegedly declined, orally and in writing, to furnish Mr. Murphy the sit-stand desk. The specific persons who allegedly refused the accommodation, in Murphy's telling, were Andrew Bolton and Nicola Coombe, both employed by the Human Resources department of Eisai UK.[6] (*See* Compl. ¶¶ 28–34). The complaint identifies an August 8, 2018 email from Coombe as the denial of Murphy's accommodation request. (*Id.* ¶ 33).

Murphy's dismissal from his UK position, too, is alleged to have occurred in the UK. It was accomplished and conveyed to him by Bolton and an unidentified human services representative, both employees of Eisai UK, allegedly on August 29, 2018. (*Id.* ¶ 38)

The "focus" of the retaliation claims (Counts 2 and 4) is also on the UK. To a great degree, the "retaliation" is based on the same facts as the refusal to provide an accommodation, already discussed. Counts 2 and 4 allege that the retaliation consisted in the failure to engage in an interactive process; unilateral determination or failure to determine whether Plaintiff's disability was being reasonably accommodated; failure to maintain or follow an antidiscrimination policy; and, in general, refusal to accommodate the disability.

The facts section of the Complaint further alleges, if not very clearly, that the retaliation consisted of Murphy's dismissal. (The only explicit invocation of

---

[6]     He also faults Lawrence Marriage of Aerotek, although Aerotek is not named as a defendant.

that theory is in the topic heading preceding Compl. ¶¶ 20–38: "B. Disability Discrimination and Retaliation (by discharge).") The dismissal, as noted, is alleged to have been accomplished entirely within the UK by Bolton and a human services representative, both employees of Eisai UK. (*Id.* ¶ 38)

The acts that form the very substance of the Rehabilitation Act discrimination and retaliation claims, then, are wholly centered on the UK. It being clear that the focus of the claims lies within the UK, it is inconsequential whether some additional conduct within the US can be identified. *See Straw, supra* (quoting *RJR Nabisco, supra*).

I nevertheless consider Murphy's proffer that some of the wrongful conduct, or related conduct, allegedly occurred in the United States:

> "[Murphy] communicated with persons in New Jersey and was subject to work directives from New Jersey, he also communicated with human resources in New Jersey and [*sic*] less than 24-hours [before[7]] Murphy was terminated. There is strong temporal proximity with the communications between human resources in New Jersey and his termination in England. This gives rise to 'reasonable expectation' that discovery will reveal evidence of the necessary element." (Pl. Opp. at 7).

That Murphy communicated by telephone or email with, and received "work directives" from, persons at Eisai US in New Jersey has no bearing on his Rehabilitation Act claim. He does not so much as allege that his supervisor or any other New Jersey-based personnel had anything to do with the denial of an electric sit-stand desk at his work station in England. The Court may accept for purposes of this motion that some supervision of his statistical work emanated from New Jersey, or that his statistical work in the United Kingdom was used to analyze results of clinical trials that had a connection to New Jersey. Those circumstances do not imply that *violations of the Rehabilitation Act* occurred in New Jersey. The allegations of the complaint, on their face,

---

[7]     I interpolate the word "before" because the reference is clearly to Murphy's allegation that he emailed Christa Murphy, the director of human resources at Eisai US, on August 28, 2018, shortly before he was terminated. (Compl. ¶ 35).

establish that any conduct that would violate the Rehabilitation Act—primarily, the alleged denial of a sit-stand desk and Murphy's firing—occurred in the U.K.

The complaint alleges and purports to describe an email exchange with Christa Murphy, the Eisai US human resources person in New Jersey. The complaint alleges that the email exchange occurred on August 28, 2018, and that Mr. Murphy was dismissed the following day, August 29, 2019. This "temporal proximity," according to Plaintiff, indicates that discovery is likely to uncover some sort of involvement by the New Jersey employees of Eisai US in the Rehabilitation Act violation.

Defendants have supplied copies of the emails themselves. (Alvarez Cert., Ex. H).) I have inspected the email exchange with Christa Murphy that Plaintiff cites, describes, and relies on in the complaint.[8]

---

[8]    The general rule is that courts do not consider matters outside of the pleadings when evaluating a Rule 12(b)(6) motion to dismiss. An exception exists, however, for any document integral to or explicitly relied upon in the complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F. 3d 1410, 1426 (3d Cir. 1997).

> The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated "[w]here plaintiff has actual notice ... and has relied upon these documents in framing the complaint." *Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir. 1993) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2nd Cir.1991)) . . . . What the rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent.

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426. Thus, factual allegations in a complaint are entitled to be credited, but a plaintiff may not describe and rely on the purported contents of a document while shielding the document itself from scrutiny.

Plaintiff cited, described, and relied on this email exchange with Christa Murphy in his complaint. (Compl. ¶¶ 35-36). Defendants, responding, supplied copies of the emails (Alvarez Cert., Ex. H), and Plaintiff does not appear to dispute their authenticity. In some respects—particularly, the dates—the emails themselves do not appear to match the complaint's description of them.

Initially, the timestamps on the emails appear to be inconsistent with the "temporal proximity" theory as described in the Complaint.[9] For this reason alone, I would reject the temporal proximity allegations (albeit without prejudice). Perhaps the complaint could be amended to explain or clarify, but the emails on which it depends do not bear the dates that are alleged.

Nor does the content of the emails give rise to an inference that any violation of the Rehabilitation Act occurred in New Jersey. In his email to Christa Murphy, Plaintiff describes his frustrations with Eisai UK's Human Resources department relating to his request for an electric sit-stand desk. (Alvarez Cert., Ex. H at 2). He attaches to his email a letter from Eisai UK, dated August 22, 2018, which he characterizes as a (further) denial of his request for an accommodation. In that letter, Eisai UK states its position that independent contractors are not covered by the U.K. law requiring that disabilities be accommodated in the workplace; nevertheless offers to continue letting Murphy use a shared electric sit-stand desk not currently in use by others; offers to let him work at home 5 days per week; and offers a desk-top standing desk, albeit without the electric feature. *Id.*

In the email to Christa Murphy, Plaintiff acknowledges that he is working in Hatfield, England, U.K. He states that he has brought an EEOC complaint in

---

[9]     Plaintiff's "temporal proximity" theory is that he sent an email to Christa Murphy on August 28, 2018 (Compl. ¶ 35) and was terminated on August 29, 2018 (Compl. ¶ 38). But the actual email Plaintiff sent to Christa Murphy bears a date stamp of August 29, 2018, at 12:45 p.m. (It is not stated whether this was local U.K. time). Ms. Murphy's responding email is not dated August 28, or even August 29, preceding Plaintiff's dismissal. Christa Murphy's responding email is time-stamped August 30, 2018 at 1:30 p.m. (Again, it is not stated whether this was local U.S. time). Even allowing for transatlantic time zones, the dates are unaffected; the difference between London, UK and Newark, NJ time in August 2018 was -5 hours. https://www.timeanddate.com/worldclock/converter.html?iso=20180828T112500&p1=136&p2=861; https://www.worldtimebuddy.com/

Plaintiff does not dispute the authenticity of the timestamped email exchange with Christa Murphy. Based on the timestamps, Plaintiff's proffered time sequence (emails, then dismissal) appears to be incorrect, which would have implications for his "temporal proximity" theory.

the United States. Eisai US, he says, is liable for Eisai UK's failure to supply an adequate workplace accommodation for his disability.

Christa Murphy, in her capacity as Senior Director of Human Resources for Eisai US, responds to that email. Her responding email states essentially that Eisai US is not Mr. Murphy's employer, has no contractual relationship with him or his company, is not the source of his grievance, and exercises no control over Eisai UK:

> Thanks for your email. It is our understanding that your company SPM Consulting Ltd was providing services to Eisai Limited (ESL) in the UK through Aerotek (part of Allegis Group Limited). To the extent that you have concerns about your employment relationship with Aerotek (part of Allegis Group Limited), please contact them directly.
>
> Eisai Inc. in the US has no contractual or business relationship with SPM Consulting, Aerotek (part of Allegis Group Limited) or you, and thus has no employment related responsibilities in this matter. Furthermore Eisai Inc. in the US has no control (whether as a parent company, shareholder or otherwise) over Eisai Limited which is a wholly owned subsidiary of Eisai Europe Limited, a company registered in England and Wales.

(Alvarez Cert. Ex. H).

The picture that emerges is that Plaintiff unilaterally emailed a complaint to the Human Resources department of a corporation distinct from the one for which he worked. But complaining to Company #2 about one's treatment by Company #1 does not render Company #2 (however unsatisfactory its response) liable for Company #1's discriminatory actions. Nor can Mr. Murphy successfully argue that the violation occurred in the United States because he sent an email to New Jersey.

The complaint alleges that the discrimination or retaliation consisted of the failure to properly process Mr. Murphy's request for an accommodation, in the form of an electric sit-stand desk; the denial of that accommodation; and, ultimately, the termination of Plaintiff's position with Eisai UK. (Compl., *passim*).

These alleged acts of discrimination or retaliation, assuming as I must that they occurred, surely occurred in the UK. They could only be performed by Eisai UK. Eisai US could not fire Mr. Murphy; he did not work for them. Eisai US did not deny him an appropriate standing desk; he did not work in their New Jersey office, or even in the United States. I have already discussed the timing problems with the "temporal proximity" theory that Mr. Murphy's firing occurred just after his email exchange with Christa Murphy. But even setting aside the timing, it is not plausibly alleged that Christa Murphy, who worked at an affiliated corporation, had any authority or ability to fire Mr. Murphy from his position at Eisai UK. Even reading between the lines, I cannot find a plausible allegation that Bolton or Coombe, who had directly dealt with Mr. Murphy's complaints, retaliated against him because he also belatedly complained to Christa Murphy.

The notion that Eisai NJ did not violate Murphy's rights in the United States tends to merge with the notion that it did not violate his rights at all. As to Eisai NJ or Christa Murphy, Plaintiff fails to articulate a theory of liability. Does he mean to allege that Christa Murphy had the authority to cause employees of Eisai UK to deny an accommodation or retaliate against Plaintiff? Does he mean to allege that Christa Murphy in New Jersey was obligated to furnish him a sit-stand desk in the UK? Plaintiff simply fails to allege facts that suggest Christa Murphy or anyone in New Jersey possessed or violated any duty to him under the Rehabilitation Act. Simply stating in the complaint that Christa Murphy "ignored his request for accommodation" does not suffice;[10] there is a whole universe of persons and corporations who could safely "ignore" that request without incurring liability. What is missing is any indication that Ms. Murphy or anyone at Eisai NJ was responsible for providing the accommodation that was allegedly denied by Eisai UK.

---

[10]    Christa Murphy did not, by the way, "ignore" Plaintiff's email; she responded with a detailed email of her own, explaining her position that he was essentially complaining to the wrong company.

Even the most plaintiff-friendly interpretation of these acts and allegations would be insufficient to displace the UK "focus" of the acts allegedly constituting violations of the Rehabilitation Act. Plaintiff's attempt to sue under the Rehabilitation Act for UK-based discrimination or retaliation fails as a matter of law. The complaint does not plausibly allege a viable cause of action under the Rehabilitation Act, and the Rule 12(b)(6) motion to dismiss must be granted.

### C. Personal Jurisdiction over Eisai UK

The complaint is therefore dismissed, at least as against Eisai US. The logic and analysis underlying that dismissal would apply equally, if not *a fortiori,* to Eisai UK. As noted above, however, extension of that Rule 12(b)(6) dismissal to Eisai UK depends on the logically prior issue of whether the Court possesses personal jurisdiction over Eisai UK.

### 1. General standards

The district court undertakes a two-step inquiry to assess whether it has personal jurisdiction over a party. *IMO Indus., Inc. v. Kiekert, AG*, 155 F.3d 254, 259 (3d Cir. 1998). First, the court is required to use the relevant state's long-arm statute to see whether it permits the exercise of personal jurisdiction. *Id.* Second, "the court must apply the precepts of the Due Process Clause of the [federal] Constitution." *Id.* Here, the first step collapses into the second, because "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4(c)). Accordingly, personal jurisdiction over a non-resident defendant is proper in this Court if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There are two kinds of personal jurisdiction: specific and general. Specific jurisdiction relies on the corporate defendant's forum-related activities that give rise to the plaintiffs' claims; general jurisdiction applies where the defendant corporation's contacts with the forum are so extensive as to render it "at home" in the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 & n.8 (1984).

### 1. Specific Jurisdiction

For specific jurisdiction, a plaintiff's cause of action must directly relate to the defendant's contact with the forum state—here, New Jersey.

Three elements are used to evaluate specific jurisdiction:

First, the defendant must have "purposefully directed [its] activities" at the forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1985) (quotation marks omitted).

Second, the litigation must "arise out of or relate to" at least one of those activities. *Helicopteros,* 466 U.S. at 414, 104 S. Ct. 1868; *Grimes v. Vitalink Commc'ns Corp.,* 17 F.3d 1553, 1559 (3d Cir.1994).

And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Burger King,*471 U.S. at 476, 105 S. Ct. 2174 (quoting *Int'l Shoe,* 326 U.S. at 320, 66 S.Ct. 154).

*O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F. 3d 312, 317 (3d Cir. 2007) (line breaks added).[11]

---

[11]   Citing *O'Connor*, the U.S. Court of Appeals for the Third Circuit has recently underscored that the necessary showing for specific jurisdiction is shaped by the nature of the claims:

For contract claims, a plaintiff must satisfy a "restrictive standard" by showing proximate causation (also called "substantive relevance"). *O'Connor*, 496 F.3d at 318, 320. But-for causation is not enough: "[T]he defendant's contacts with the forum [must have been] instrumental in either the formation of the contract or its breach." *Gen. Elec. Co. v. Deutz AG,* 270 F.3d 144, 150 (3d Cir. 2001) (emphasis added). So a plaintiff

Murphy makes no substantial argument as to specific jurisdiction. There is a conclusory venue allegation that the facts of the case arose in New Jersey, but my review of the allegations, *see* Section A., *supra,* does not support that conclusion. Murphy worked in the United Kingdom for Eisai UK; his work station where the sit-stand desk would be located was in the UK; he raised the issue about the sit-stand desk with Eisai UK in the United Kingdom; and his services were terminated by Eisai UK in the United Kingdom. Murphy argues that his job as a statistician related to clinical tests that occurred, in part, in New Jersey, and other facts of that nature. Such connections with New Jersey, however, do not relate directly to his Rehabilitation Act claim; they are at best of the "but-for" variety, which, as a matter of law, are not sufficient to support specific jurisdiction. *See Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 130 (3d Cir. 2020).

Because none of Eisai UK's activities giving rise to a Rehabilitation Act claim occurred in New Jersey, there is no specific jurisdiction as to Eisai UK.

### 2. General jurisdiction

I turn to general jurisdiction. That doctrine sets a high threshold:

---

cannot allege simply that but for x's occurrence, y (which may have been remote and not foreseeable) would not have happened.

For tort claims, the standard is less restrictive. *O'Connor*, 496 F.3d at 320. But tort claims still "require[ ] a closer and more direct causal connection than" but-for causation. *Id.* at 320–23. The defendant must have benefited enough from the forum state's laws to make the burden of facing litigation there proportional to those benefits. *Id.* at 323 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).

Plus, intentional torts require more: "The defendant [must have] expressly aimed [its] tortious conduct at the forum" to make the forum "the focal point of the tortious activity." *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d Cir. 1998). And "the plaintiff [must have] felt the brunt of the harm in the forum." *Id.*

*Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 130 (3d Cir. 2020).

> Goodyear [*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915,
> 131 S. Ct. 2846 (2011)] made clear that only a limited set of
> affiliations with a forum will render a defendant amenable to all-
> purpose jurisdiction there. "For an individual, the paradigm forum
> for the exercise of general jurisdiction is the individual's domicile;
> for a corporation, it is an equivalent place, one in which the
> corporation is fairly regarded as at home." 564 U.S., at ——, 131
> S.Ct., at 2853–2854 (citing Brilmayer et al., A General Look at
> General Jurisdiction, 66 Texas L.Rev. 721, 728 (1988)). With
> respect to a corporation, the place of incorporation and principal
> place of business are "paradig[m] ... bases for general jurisdiction."
> *Id.*, at 735. *See also* Twitchell, 101 Harv. L.Rev., at 633. Those
> affiliations have the virtue of being unique—that is, each ordinarily
> indicates only one place—as well as easily ascertainable. *Cf. Hertz
> Corp. v. Friend*, 559 U.S. 77, 94, 130 S.Ct. 1181, 175 L.Ed.2d 1029
> (2010) ("Simple jurisdictional rules ... promote greater
> predictability."). These bases afford plaintiffs recourse to at least
> one clear and certain forum in which a corporate defendant may be
> sued on any and all claims.

*Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S. Ct. 746, 760 (2014).

Eisai UK is a company organized under the laws of England and Wales, with its principal place of business in the United Kingdom. That is presumptively its "home." The plaintiff, even giving his allegations the full deference they are due,[12] has not come close to suggesting that Eisai UK is "at home" in New Jersey, or that this State should be regarded as the ordinarily "unique" forum where Eisai UK may be sued on all claims. *Id.*

In his complaint and opposition brief, Murphy has set forth the following factual allegations regarding Eisai UK's contacts with New Jersey:

- Eisai UK "transacts business in Japan and the United States including Bergen County, NJ" (Compl. ¶ 3);

---

[12]   Defendants also provide evidence of their own that Eisai UK lacks the contacts with New Jersey that are required for a finding of general jurisdiction. Because of the procedural posture, however, I credit Mr. Murphy's allegations and give him the benefit of reasonable inferences. *See* p. 5, *supra*. That said, there does not seem to be any major dispute regarding the relevant facts; the parties primarily disagree over their legal significance.

- Eisai UK "receives federal monies in amounts greater than $10,000.00" (*Id.*);
- Both Defendants "regularly conduct business within this district and the acts complained of arose in this district" (*Id.* ¶ 8);
- "There were [ ] periodic meetings held in New Jersey between management officials of [Eisai UK] and [Eisai US]" (*Id.* ¶ 15);
- "[Eisai UK] conducts clinical trials, including [Study 207], on behalf of [Eisai US] and does the statistical analysis of the results, but [Eisai UK] does not receive any direct profits from future sales from a successful marketing application to the FDA" (Compl. ¶ 18);
- "[Study 207] is a clinical trial sponsored by [Eisai UK] with [Eisai US] listed as the responsible party" (Pl. Opp. at 6);
- "[Study 304], An active Phase 3 clinical trial for Heptocellular Carcinoma. Is currently being conducted and sponsored by [Eisai UK] and this study has a clinical site in East Orange, NJ. [Eisai UK] is currently doing business in New Jersey and the study completion date is listed as July 31, 2020." (Pl. Opp. at 6).
- Mr. Cixin He, an employee of Eisai US who was involved in clinical trials, managed Mr. Murphy's statistical work. (Compl. ¶ 13)
- "Mr. Cixin He traveled to the offices of [Eisai UK] in Hatfield, England during July 2018 for a face-to-face meeting with his statistical team, who were working at [Eisai UK]." (*Id.* ¶ 15).

These facts, whether considered alone or together, would not give rise to any reasonable inference of general jurisdiction over Eisai UK.

The statements that Eisai UK "conducts business" here lack particularity. Similarly, the general reference to management-level "meetings" in New Jersey, even given some latitude, come nowhere near suggesting that Eisai UK's presence in the New Jersey meets even the minimal threshold of being continuous and systematic. Eisai UK's alleged receipt of federal funds,

although a prerequisite to application of the Rehabilitation Act, has no bearing on whether it is "at home" in New Jersey.

I assume the truth of the allegation that Mr. He supervised Murphy's statistical work, which entailed communication between the two. Mr. He, however, is an employee of Eisai US, not Eisai UK. The most that can be said is that Eisai UK used the services of the employee of its affiliate in some manner. Mr. He's actions bear no relation to the Rehabilitation Act claims, and fall far short of suggesting that Eisai UK is "at home" in New Jersey.

As to the clinical trials, Eisai UK argues persuasively that its connection to such studies does not establish the necessary relationship with New Jersey. *See Tercica, Inc. v. Insmed Inc.*, No. 05-5027, U.S. Dist. LEXIS 41804, at *40 (N.D. Cal. June 9, 2006) (holding that no general jurisdiction existed even though the company was participating in two clinical trials in the forum state). Murphy does not cite any legal authority that general sponsorship of or participation in clinical trials in the forum state confers general jurisdiction in the sense of making that state the corporate defendant's "home."[13]

All of the above facts, singly or in combination, fail to establish or even really suggest that Eisai UK is "at home" in New Jersey within the meaning of, *e.g., Daimler, supra*, and *Goodyear, supra*.

Because this Court does not have specific or general jurisdiction over Eisai UK, any claims against it must be dismissed for lack of personal

---

[13]     Defendants also argue that Mr. Murphy has overstated both the connection of the studies to New Jersey and Eisai UK's involvement in them. According to a declaration from the Senior Director, Regulatory Affairs for Eisai US, Study 207 does not have any study sites located in New Jersey. (Mayer Cert. ¶ 8). Study 304 has multiple study sites globally, one of which is located in New Jersey. (*Id.* ¶¶ 12, 14). Although Eisai UK is listed as a sponsoring party of the study as a whole, Eisai US is the entity which has contracted for the site in New Jersey. (*Id.* ¶ 15). Eisai US is also the only entity listed on regulatory filings submitted to the United States Food and Drug Administration. (*Id.* ¶ 16). For present purposes, I do not resolve these factual issues.

jurisdiction. Because this dismissal is entered on grounds of lack of jurisdiction, it is without prejudice.

### 3. Jurisdictional discovery

A plaintiff bears the burden of proof that either specific or general jurisdiction exists. *Marten v. Godwin*, 499 F.3d 290, 295–96 (3d Cir. 2001). That said, a court will assist the plaintiff in proving jurisdiction "by allowing jurisdictional discovery" where appropriate. *Kirkwood v. Brenntag N. Am., Inc.*, 2020 U.S. Dist. LEXIS 55104 at *14 n.3 (D.N.J. Mar. 30, 2020) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)).

At the pleading stage, a plaintiff need only present "factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between the party and the forum state,' such that [its] claim is not clearly frivolous." *Id.* (quoting *Toys "R" Us*, 318 F.3d at 456). *See also Toys "R" Us*, 318 F.3d at 456 (jurisdictional discovery granted where "a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state'") (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). A grant of jurisdictional discovery lies within a district court's discretion, guided as always by the relevant legal standards. *SoftwareArt Corp. v. Satyajit Gopalakrishnan*, 2008 U.S. Dist. LEXIS 55708 at *7 (D.N.J. July 22, 2008) (citing *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)); *Rakoff v. St. Clair, CPAS, P.C.*, 2013 U.S. Dist. LEXIS 33710 at *26 (jurisdictional discovery should be "freely granted" and its scope is firmly within a district court's discretion).

Mr. Murphy's case for general jurisdiction, even giving the factual allegations of the complaint (as opposed to its legal conclusions) the required deference, lacks the required "reasonable particularity." Murphy does not so much as proffer a sense of what relevant jurisdictional facts discovery might

uncover. The facts and allegations do not rise to the level where I, within my discretion, would permit further exploration through jurisdictional discovery.[14]

Jurisdictional discovery is therefore denied.

## IV.   Conclusion

For the foregoing reasons, the motion to dismiss the complaint as against Eisai UK for lack of personal jurisdiction, and against Eisai US for failure to state a claim, is **GRANTED**.

Dated: November 27, 2020

/s/ Kevin McNulty

_____
**Kevin McNulty**
**United States District Judge**

---

[14]   Confirming, though not dictating, my discretionary decision is the fact that I have already ruled, with respect to Eisai US, that the complaint does not state a claim, so jurisdictional discovery would be futile. Should my jurisdictional ruling be reconsidered or reversed, it is the Court's intent that the Rule 12(b)(6) dismissal in Part A would apply to Eisai UK as well.